# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9621 | **DATE** | 1/31/2003 |
| **CASE TITLE** | Henderson vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB - 3 2003 | |
| | Notified counsel by telephone. | | date docketed | 25 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 JAN 31 PM 1:59 | | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

| | |
|---|---|
| ANDRE HENDERSON,<br><br>Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART, Commissioner<br>of the Social Security Administration,<br><br>Defendant. | **DOCKETED**<br>FEB 3 2003<br><br>No. 01 C 9621<br><br>Mag. Judge Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The plaintiff, Andre Henderson ("Henderson") has brought a motion for summary judgment seeking judicial review of the final decision of defendant Jo Anne B. Barnhart, who denied Henderson's claim for disability insurance benefits and Supplemental Security Income benefits under the Social Security Act, 42 U.S.C. §§416(i), 423(d), 1382(c). Henderson now appeals that decision in federal court as permitted by section 405(g) and section 1383(c)(3), which grant federal courts the power to review the Social Security Commissioner's final decisions. Both sides now move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff also alternatively requests a remand for a new hearing. For the foregoing reasons we affirm the decision of the Commissioner.

I.  **Procedural History**

Henderson first filed for Social Security benefits on June 22, 1999, asking for disability benefits dating back to April 15, 1998. R. 132, 216.[1] His claim was denied by the

---

[1] All citations to the record take the form of "R. xx", which indicates the page number.

25

Commissioner. R. 78-81. On December 16, 1999, Henderson filed a request for hearing. R. 82. Thereafter, on September 5, 2000, Administrative Law Judge Michael R. McGuire held a hearing during which the plaintiff, represented by counsel, and a Vocational Expert (VE) appeared and testified. R. 23-24. Subsequently, ALJ McGuire issued a written opinion on September 5, 2000 denying plaintiff benefits. R. 16-22. ALJ McGuire held that the plaintiff was not disabled because he still had the ability to perform his previous jobs as a courier and bus driver despite his impairments. R. 21. The Appeals Council denied plaintiff's appeal. R. 6-12. Therefore, the ALJ's decision stands as the Commissioner's final judgment. See Zurowski v. Halter, 245 F.3d 881 (7th Cir. 2001).

## II. Plaintiff's Testimony

At the time of the hearing, Henderson was 34 years old, single, and lived with his mother and sister. R. 35-36. He had completed high school in a special education program and had attended special education classes during part of elementary school. R. 37.

After graduating from high school, Henderson worked as a bus driver for three separate bus companies between 1993 and 1999, for a total of approximately six and a half years. R. 52-55. The work required passing a written exam to obtain a bus drivers license. R. 55. His duties included picking up children along a specified route for two hours in the morning and 2 hours in the afternoon, five days a week during the school year. R. 41-42.

Ultimately, Henderson was dismissed from each of the jobs. According to his testimony, at the first company, he neglected to notice that someone had placed a gas can on the top of the bus. R. 52-53. At the second company, he was falsely accused of writing a note to a student; the accusation was later retracted. R. 42, 56. At the third

2

company, although his work was acceptable, his bus driver's license had expired and he could not pass the exam to have it reinstated. R. 55-56. At the time of the hearing, Henderson held a regular driver's license but not a bus driver's license.

Subsequently, in 1999, Henderson obtained work as a courier. R. 115. His duties at this job included picking up laboratory specimens from doctors' offices along a specified route. R. 42-43, 169-171. Henderson worked 4-5 hours per day 5 days a week. This job ended when a background check revealed that Henderson had a criminal record. R. 43-44. By his own testimony, he would most likely still have that job if not for the background check. R. 58.

Henderson also testified that he has asthma and experiences shortness of breath with exertion. R. 44-45. The asthmatic symptoms do not appear if he is sitting, unless the environment is smoky, hot, or stuffy. R. 44-45. He typically uses an over the counter inhaler to control any symptoms. R. 45.

### III. Plaintiff's medical examinations

Peter Biale, M.D. is a consultative examiner who assessed Henderson in August 1999. R. 161. He observed that Henderson exhibited occasional wheezing and rapid breathing as a result of minor exertion. R. 161. He opined that Henderson's shortness of breath could be due to obesity or to chronic pulmonary disease. R. 162. A pulmonary function test showed moderate obstruction in the lungs, low vital capacity, but only mild restriction post-dilation. R. 173. Henderson's blood pressure readings were very elevated and he was advised to go to the hospital. R. 161.

John O'Donnell, M.D. is a psychiatrist who examined Henderson in August 1999 for the Social Security Administration. R. 165. He noted that Henderson engaged in some

3

productive home activity: Henderson said he cooked, and sometimes helped clean and do laundry. R. 166. In addition, he went to church once a month, watched TV, and read the paper. R. 166. He had come by two buses to the appointment unaccompanied. R. 168. Dr. O'Donnell diagnosed Henderson with a low average or borderline IQ and an unspecified personality disorder. R. 170. Dr. O'Donnell opined that Henderson could manage his own funds. R. 169.

E. Kuester, M.D. reviewed all of the medical and psychiatric records for the Social Security Administration in September 1999. R. 176-177. Dr. Kuester concluded that Henderson had slight restrictions in daily living and maintaining social function, often had deficiencies in concentration, but never had had an episode of deterioration in a work or work-like setting. R. 183. On the other hand, he was moderately limited in his ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods of time, interact appropriately with the general public, be aware of normal hazards and take appropriate precautions, and set realistic goals or make plans independently of others. R. 185-6. Dr. Kuester opined that Henderson could perform simple repetitive tasks in a work setting but should not plan extensively, make critical decisions, operate hazardous machinery, or deal with the public. R. 188.

Thomas A. Rizzo, Ph.D. is a consultative psychological examiner who assessed Henderson in April, 2000. Based on a series of tests he found that Henderson had a verbal IQ of 77, performance IQ of 73, and full scale IQ of 75. R. 207. These tests indicate that Henderson functions at a borderline normal intellectual capacity. R. 207. In reading, spelling, and arithmetic, Henderson's capabilities are more restricted and he functions at a mild mentally retarded level. R. 207. Dr. Rizzo opined that Henderson can

4

remember locations and work-like procedures and can understand short and simple instructions but is moderately limited in understanding and remembering detailed instructions. R. 210. Furthermore, according to Dr. Rizzo, Henderson is moderately limited in interacting appropriately with the public and peers and is markedly limited in his ability to accept instruction and respond to criticism. R. 210.

## IV. Vocational Expert's testimony

Rochelle Hosieth is a vocational expert who testified at the administrative hearing. R. 72. In responding to a hypothetical posed by ALJ McGuire, Ms. Hosieth opined that a person who could lift and carry 20 lbs. occasionally, 10 lbs. frequently, stand, walk, sit for six hours, push and pull without limitation and do simple and routine tasks but needed to be in a well-ventilated environment and avoid fumes, odors and dust, and was illiterate with no functional math skills could do Henderson's past work. R. 72. The VE testified that an individual could not perform Henderson's past work if he had the limitations suggested by Dr. Rizzo. R. 73.

## V. Standard of Review

In reviewing the Commissioner's final decision, this Court must accept the ALJ's findings of fact if they are supported by substantial evidence. 42 U.S.C. §405(g). Although a minuscule amount of proof is not enough to qualify as substantial evidence, the standard only requires enough "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Charter*, 55 F.3d 300, 305 (7th Cir. 1995) *quoting Richardson v. Perales*, 402 U.S. 389, 401 (1972). If the record contains such support, the court must affirm the decision of the Commissioner unless she has made an error of law.

*Veal v. Bowen*, 833 F.2d 693, 696 (7th Cir. 1987). This court may not re-weigh the evidence, re-evaluate the facts, or substitute its own judgment in determining whether a claimant is or is not disabled. *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ). *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). This Court may not reconsider an ALJ's credibility determination. *Prince v. Sullivan*, 933 F. 2d 598, 601-2 (7th Cir. 1991). Thus, a plaintiff's proof must show that no reasonable person, based upon the record as a whole could have found as the Commissioner did. *Rucker v. Shalala*, 894 F.Supp. 1209, 1213-14 (S.D. Ind. 1995).

## VI. Analysis

Andre Henderson contends that the ALJ erred in concluding that he was not disabled. In particular, Henderson claims that the ALJ made procedural errors that warrant reversal and remand. First, Henderson alleges that the ALJ's decision is not supported by substantial evidence because it disregarded critical medical testimony. Second, Henderson alleges that the ALJ erred procedurally in inadequately articulating the reasons for his rejection of Henderson's application.

The ALJ must undertake a five-step process to determine whether an adult claimant is disabled under the Social Security Act, and thus unable to engage in any substantial gainful activity due to a medically determinable physical or mental ailment. 42 U.S.C.§§423(d)(1)(A), 1382c(a)(3)(A). An individual is considered disabled only if he is neither able to perform any of his previous work, nor any other work existing in significant

numbers in the national economy. 42 U.S.C. §§423(d)(2)(A), 1238(a)(3)(B); 20 C.F.R. §§404.1520(e), (f), 416.920(e)(f). The standard five-step processes set forth in the regulations is as follows:

(1) Is the claimant presently unemployed?
(2) Is the Claimant's impairment or combination of impairments severe?
(3) Do his or her impairments meet or exceed any of the specific impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 which the Secretary acknowledges to be conclusively disabling?
(4) If the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his or her past relevant work?
(5) Is the claimant unable to perform any other work in the national economy given his or her age, education, or work experience?
*Wark v. Social Sec. Admin.*, No. 98 C 1905, 2000 WL 1029170 at *4 (N.D.Ill. Jul. 26, 2000) citing, Reg. §416.920(a)-(f); *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Under the five part sequential analysis, "[a]n affirmative answer leads to either the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3 ends the inquiry and leads to a finding that the claimant is not disabled." *Zalewski v. Heck*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). The claimant bears the burden of proving Step 4. *See Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). At that step, the plaintiff must demonstrate his residual functional capacity (RFC) and that his RFC does not allow him to do his past work. *See* CFR §404.1520(e).

In undertaking the five-step process, ALJ McGuire first determined that Henderson had engaged in substantial gainful activity since the alleged onset of disability but not since the termination of his courier job. (Step 1). R. 21. Next, the ALJ determined that Henderson has a combination of impairments supported by the record and considered severe. (Step 2). R. 21. However, the ALJ found that Henderson did not have an impairment or combination of impairments that met or were equal to one listed in 20 C.F.R.

7

Pt. 404, Subpt. P., App. 1 (Step 3). R. 21. At step four, the ALJ found that Henderson's past relevant work as a courier and bus driver did not require work precluded by his RFC diagnosis or by his asthma, hypertension, and borderline IQ. R. 21. Finally, the ALJ determined that Henderson's impairments were not so severe as to prevent him from performing all types of work (Step 5), and thus found that Henderson was not "disabled."

## A. ALJ's alleged failure to give due weight to the opinions of examining medical professionals.

The plaintiff argues that if ALJ McGuire had given due weight to Dr. Rizzo's testimony, the evidence would mandate a finding that plaintiff was disabled and could not perform his past work. Specifically, plaintiff claims that ALJ McGuire ignored Dr. Rizzo's findings outright, and undervalued the opinions of Dr. Kuester and VE Ms. Hosieth. According to the plaintiff, given this evidence, any reasonable person would have found plaintiff was disabled.

Contrary to plaintiff's argument, a reasonable person could have found plaintiff not disabled, in particular because of the medical and vocational expert's testimony. As a preliminary matter, we bring attention to the fact that it is irrelevant to our analysis whether an ALJ undervalued certain expert opinions. A court cannot reweigh expert testimony, it can only decide whether the weight given the experts was reasonable or not. *Luna*, 22 F.3d at 689. Therefore, we will only examine whether the ALJ's weighing of the evidence was reasonable and supported by substantial evidence.

First, the plaintiff alleges that the court unreasonably ignored Dr. Rizzo's findings. Dr. Rizzo opined that plaintiff was moderately limited in many aspects of work related

functioning and markedly limited in accepting instructions and criticism from supervisors. In addition, the VE indicated that if Dr. Rizzo's opinion was indeed accurate, plaintiff could not perform his previous work as a bus driver and courier.

Although medical evidence should be taken into account in a judge's decision, medical testimony need not be unequivocally accepted. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). On the contrary, a medical opinion can be rejected outright if it is inconsistent with other evidence. *Knight v. Mater*, 55 F.3d 309, 314 (7th Cir. 1995).

In this case, ALJ McGuire had a legitimate basis to reject part of Dr. Rizzo's opinion because Dr. Rizzo's opinion directly contradicted plaintiff's demonstrated capacity to work. Dr. Rizzo described Henderson as having marked limitations in his ability to accept instruction and respond to criticism, a charge unsupported by any other doctor or employer. This diagnoses is not supported by the other examining doctors, who each found lesser degrees of limitation.

More importantly, however, is plaintiff's six and a half years of satisfactory work. Each job generally lasted more than a year and plaintiff's work produced only a few minor complaints. In weighing the opinion of a psychiatrist who examined the plaintiff for two hours against almost six and a half years of successful work, it was not unreasonable for the ALJ to place more importance on plaintiff's experience, especially because a judge is entitled to weigh a plaintiff's demonstrated experience more heavily than medical or other assessments. *See Young v. Sullivan*, No. 91 C 7703, 1992WL212588 (N.D.Ill, Aug. 27, 1992) *8.

Furthermore, Drs. Kuester, Hudspeth and O'Donnell's opinions are all consistent

9

with a finding that Henderson is not disabled. They, like Dr. Rizzo, found moderate limitations in several areas, consistent with plaintiff's abilities, and never opined that plaintiff cannot work.

In addition, there is very scant evidence in the record that plaintiff's condition deteriorated after his dismissal from the last job. Since 1999, plaintiff failed the bus licensing exam - very questionable "proof" of plaintiff's deteriorating condition. Similarly, the previously undiagnosed personality disorder alluded to by Dr. O'Donnell is poorly supported by the rest of the record and entirely unexplained by Dr. O'Donnell's opinion. Therefore, it was reasonable for the ALJ to assume that plaintiff's mental limitations were similar to those that existed while he was working.

Plaintiff's physical limitations, including asthma, high blood pressure, and obesity had possibly worsened since his initial work experiences. However, plaintiff's physical impairments were only slight and by no accounts serious enough to prevent work; no doctor opined that Henderson was unable to perform any work because of physical limitations.

Therefore, we find ALJ McGuire's decision was entirely reasonable and supported by substantial evidence.

### C. The ALJ's alleged inadequate reasoning in his opinion.

Next, plaintiff argues that ALJ McGuire did not adequately explain his reasons for denying plaintiff benefits and that his opinion is filled with inconsistencies. The ALJ's decision, to be upheld, must build a logical bridge between the evidence and the result. *Zurawski*, 245 F.3d at 887. The reasons for his conclusions may be minimally articulated as long as in their entirely they permit a meaningful review. *Burnett v. Bowen*, 830 F.2d

731, 735 (7th Cir. 1987) (internal quotations and citations omitted). In particular, the ALJ "need not provide a written evaluation of every piece of evidence that is presented." *Pugh v. Bowen*, 870 F.2d 1271, 1278 (7th Cir. 1989) (internal quotation and citations omitted).

It is true that the ALJ did not explicitly address the minutia of Dr. Rizzo's comments or of Dr. Kuester's opinions. However, there was no need to do so, as generally, the ALJ explained his rationale enough to build a logical bridge for later review. As we explained above, the ALJ generally accepted the majority of the medical opinions regarding plaintiff's abilities, the limitations found were consistent with plaintiff's demonstrated past work history, and no expert witness stated that plaintiff could not work.

Therefore, for the foregoing reasons, the holding of the ALJ is affirmed.

ENTER:

MICHAEL T. MASON
United States Magistrate Judge

Dated: January 31, 2003